Next case is INRE SCRIPTPRO, 2011, 11-01-2013. 11-39, Mr. Cleveland. MR. CLEVELAND May it please the Court, SCRIPTPRO is appealing a decision from the United States Patent Office that the claims of the Coughlin patent are invalid for obviousness. The rejection, there are a number of rejections, all of them utilize as an essential feature the combination of patents called Walker, Lif, and Baum. It is not SCRIPTPRO's contention that the rejections fail to set forth any of the isolated features of the patent claims. SCRIPTPRO is attacking the motivation to combine. MS. GOTTLIEB Well, Baum says, and I quote, both the pharmacist who is filling the prescription and the patient can compare the picture of the drug on the label with the drugs in the container and the patient is better educated on and made familiar with the visual appearance of the drug. Why isn't that a motivation to combine? Both Baum and Walker clearly pertain to the desire to educate people so that they will get the correct drugs. MR. CLEVELAND Your Honor, this is the position of the record below and the solicitor's brief. It is speculative. What we have in terms of a declaration from Michael Coughlin, who is one of the inventors, it was provided during the reexamination proceeding itself. This declaration attests to the actual facts at the time of the invention and what was going on with the Oregon Pharmacy Board. There was a horrible problem in the art where 51… MS. GOTTLIEB Just to make sure I understand it, the Coughlin declaration talks about pharmacists' reluctance to develop a system, but it seems to be an issue of cost to me rather than feasibility in the discussion. MR. CLEVELAND In more detail with further remarks, but the basic answer to your question, Your Honor, is that there were two possible conclusions that could be drawn from the declaration of Mr. Coughlin. One is that the 75 invited industry representatives who the Oregon Pharmacy Board wanted to discuss… brought to Oregon to discuss feasibility of this requirement. One is that they just missed it. They just did not make this leap. That is evidence to show what a person of… the huge body of representatives, invited representatives, evidence to show… MS. GOTTLIEB Those are secondary considerations because now you're saying something totally different. You said the reason we're appealing is motivation to combine, and it appears the Patent Office is arguing that there is an express motivation provided in the bomb reference itself, and that is because both the Walker and Baum references exist for the purpose of educating people so that they get the correct drugs, and increasing that education, they're saying the statement in Baum amounts to an express motivation to combine, which we aren't fortunate to get very often. So, I wanted to know from you specifically, before you deviate off into secondary considerations, why this is not an express motivation to combine. MR. GOTTLIEB I understand the question, and the answer is there is not an express motivation to combine because it simply says you would want to print a picture of the medicine, a picture of the pill, on the pharmacy dispensing bottle label. It does not say that you would want to do this in a way that combines this in any way with the Walker reference as the Patent Office and the solicitor's brief assert. MS. GOTTLIEB But the express motivation to combine doesn't require it to say, and yes, do this with Walker. Both Walker and Baum clearly, by their own language, pertain to educating consumers so that the right drug is received. And since they have this clear statement of common purpose, why isn't that a suggestion to combine the two? MR. GOTTLIEB It is perhaps a suggestion to combine the two, but it is not an express motivation to combine. We do not say we would like to look upstream in this process for other verification systems. In fact, Walker did not exist at the time of Baum, and that type of suggestion would have been impossible. MS. GOTTLIEB I don't understand still your argument on why it's not a suggestion to combine. What you just said is it might well be a suggestion, but it's not an express suggestion. Do you want to switch to secondary considerations? Because I will tell you I'm failing to appreciate your argument on the prima facie case.  GOTTLIEB Yes. Well, Your Honor, we're not arguing a prima facie case. The prima facie case is just a procedural device. So the Patent Office has set that up in this case as like a fortress that cannot be changed or altered by the rebuttal evidence that we have submitted in context of secondary considerations. So, yes, I'm very anxious and want to discuss secondary considerations, but your question was is there an express motivation to combine, and there is not. There is perhaps the suggestion to combine based upon a common purpose. MS. GOTTLIEB Okay. Well, then why don't we go to your secondary considerations? GOTTLIEB Thank you.  GOTTLIEB You have your chance to get those out. GOTTLIEB So we have a situation where 75 invited representatives who were the Oregon Pharmacy Board invited to discuss a proposed rule. They were equipment manufacturers, software and equipment providers. They were presented with an option to print stickers, adhesive stickers that could be stuck on the dispensation bottle. This was the issue before the representatives, and they uniformly except for ScriptPro, Mr. Coughlin. The industry is uniformly opposed except for the ScriptPro representatives in attendance. So the idea is that if you have a sticker and you put it on a bottle, it doesn't necessarily reduce dispensation errors. When you combine that, though, as occurred to Mr. Coughlin, you eliminate then errors because you're tracing this from the upstream prescription all the way through the pharmacy dispensation process, including the medicine bottle, the big bulk bottle, and then the individual vial that the medicine goes out and is dispensed in. So this has, in fact, made a big difference in resolving what were at the time 51.5 million dispensation errors that were occurring every year. These errors were injuring people. They were killing people. For somebody to suggest it is credible, in fact, it's just not credible, that the assembled representatives, if they conceived of this and appreciated the significance in error reduction, that they would not have done something. But the fact is they probably just missed it. Page 20 of the solicitor's brief, though, seems to argue a different point. They simply ignore the rebuttal evidence that we have. The actions of these 75 invited guests are indicative of what a hypothetical person of ordinary skill in the art would do when confronted with this same opportunity to combine. And the fact is they simply did not make that jump. They're charged. The Walker patent was on file. These representatives were charged with that knowledge of that prior art, and they simply missed it. They didn't do this. So counsel? Go ahead. They missed it, or they just didn't want to adopt it? That it was more work than they wanted to do? It wasn't a question they didn't think it would work, was it? There are two conclusions that could be drawn. One is that they missed it. The solicitor takes the position they simply did not want to adopt it for a cost basis. But it is also not credible that had they realized this and had they appreciated the benefits that could be gained in patient safety and reduction in dispensation errors, had this been appreciated by the assembled body of representatives, they certainly would have done this. It would have required putting about 100,000 medicines in a database. This work was done. It took about a year, and a follow-up study from Auburn University. Is there evidence on the record that by adoption of this procedure, this new label, X,000 lives or injuries were avoided? No, sir. Your Honor, we have the testimony from Mr. Coughlin that a confirmation study from Auburn University documented a significant advantage. We have not been able to introduce that to the record because it, by nature of the study, it cannot be made, it cannot enter the public record. So we have not introduced it to the record below. To follow up with Judge Lori, now, other than the monetary expense and the effort that would be expended in building the database, would one that's skilled in the art, wouldn't somebody that's skilled in the art add the physical attributes to a label? Absent the expense and the effort. Absent the expense and the effort, one would perhaps follow lift or bomb to put the picture of, say, a pill on the label. One would not necessarily, in the view of the prior art of the time, as assessed by the reactions of these assembled representatives, one would not necessarily have thought to look upstream to a process of confirmation from the incoming prescription to the bulk bottle to the dispensing bottle. Wait a minute. None of your evidence on secondary considerations, as I understand it, is about the people rejecting the idea of the confirmation. What I understand your secondary evidence to be directed to is people wouldn't put the picture on the bottle. Am I wrong? I mean, is your secondary evidence really directed to the confirmation process? No. The secondary evidence is directed to, essentially, the refusal of the representatives to adopt any process at all of putting the picture on the bottle. This was the... But it was known how to do it, right? Because bomb and lift disclosed those things. Yes. And it was known that it would, at least they state, that it would be good to educate people to avoid problems of dispensing wrong meds. People would be able to see the pill and what it was supposed to look like. Yes, but this, if you think about it, this does not necessarily, that alone does not necessarily reduce the frequency of dispensation errors. Because if somebody, for example, the stickers are on the bulk medicine bottle, as was part of the suggestion, you could peel it off and put it on the bottle as it's being dispensed, then the sticker would match what's in the bottle, but it would still be an error. And it would be, in fact, the consumer would have a false impression of accuracy because it's got the sticker matching the contents when, in fact, it would be an error. So how that sticker was placed on and when this happened during the process was an issue for resolution. In fact, Yukon's article talks about a meeting to discuss this, the meeting in 1997, for a rule to be promulgated in 1998 to take effect in the year 2000. So I mean, this all takes a lot of consideration in the art. Mr. Cleveland, you're into your rebuttal time. You can save it or use it. I believe that I will save it, Your Honor. All right. Ms. Sullivan. May it please the Court, I'd like to start by responding to Scrippo's arguments that others in the art, including the people at the Oregon meeting, failed to act. The problem with this argument is it ignores the statutory basis for the rejection. It's a 103 obviousness rejection, not a 102 anticipation rejection. Basically what they're trying to say is that my invention is patentable because no one else actually made it. And the problem with that is if you took that argument to its logical conclusion, there could never be a 103 rejection. But let's turn to what actually happened at that Oregon meeting because what happened at that meeting does not actually show that Scrippo's claimed invention wouldn't have been obvious. First of all, let's look at what they were actually talking about. They weren't actually talking about making the claim, the invention as Scrippo now claims it. They were talking about implementing the prior art. They were talking about printing pictures on labels, and that's disclosed by Baum. And they were talking about making stickers with pictures of drugs, and that's disclosed by Nielhaus. So already there's a disconnect between what happened at that meeting and the actual claimed invention. But putting that aside, even if they were saying, I don't want to make the claimed invention, you have to look at why they were saying that. They weren't saying it because it wasn't obvious to them or because they didn't know how to do it. They were saying, I don't want to make a database because it would cost too much. They said, we're already under a lot of cost pressure, and they also said, I would have to make a database, which is just another way of saying, I don't want to put the cost and effort into making a database. And so we have a situation where they knew the path to take. They simply chose not to take that path because of cost. And I believe the Fahrenkopf case is directly on point here, because in Fahrenkopf the court said that skilled artisans would not make a claimed combination because the cost is irrelevant to the obviousness analysis. There has to be some other reason, some other hurdle that is the reason why someone would not combine the prior art. And in Fahrenkopf they talked about a technological hurdle. In here there was no technological hurdle. Everyone, as the board found and as they admit in their blue brief on page 18, it was feasible to make these databases. Everybody knew how to make them. It was routine in the art. Baum teaches you how to make these databases, and the board found that as a matter of fact. I believe that's finding of fact seven. And furthermore, if you look at ScriptPro's patent, if there was some sort of hurdle in the art, they don't teach anyone how to overcome that hurdle. In their patent they merely disclose a attribute database, and they say it preferably includes all of the drugs that a pharmacist would dispense. That's all they say about the database. They don't give the skilled artisan an algorithm. They don't tell you how to link it up to the other parts of the computer system, nothing like that. How about the motivation to combine? Yes, your honor, if you, if the court would, the court could look to pages 13 to 14 of our red brief, and it showed, and claim one is reproduced there. And as you can see from that claim, Walker teaches almost every element of the claim. The only thing that Walker teaches is the conditional matching step. The only thing that Walker is missing is he's missing this extra information on the label. The only thing he's missing is printing a picture of the drug on the label. In Baum and Liff, not only do they teach printing a picture of a drug on a label, but they specifically teach the advantages of doing so. As Judge Moore said earlier, Baum says you would want to do this because it educates the patient, it familiarizes the patient with what the drug looks like, it allows the patient to make sure that the drug that they get in the vial matches the drug that they were prescribed. And Liff also says this provides additional security. So Baum and Liff are expressly teaching the skilled artisan how to improve a prescription label like the one in Walker. So what we have here, as was said in KSR, the mere application of a known technique, which is adding a picture of a drug, to a piece of prior art, Walker, that's ready for the improvement. And that's the express motivation. What about the arguments on a long-felt need in commercial success? Yes, Your Honor. The problem with Scrippo's long-felt need argument is they did not actually submit the evidence that they say proves that they satisfied a long-felt need, and I'm talking about the Auburn University study. We don't know anything about that study. We have no idea what it says. We don't know if it shows that they satisfied a long-felt need. All they have is the inventor's declaration saying a study exists, but we don't know anything about it. And in order to satisfy a long-felt need, even if we were to assume that a long-felt need existed, you have to actually have evidence that they satisfied that need, and it's simply missing here. They didn't talk about copying, but I think our position on copying is clear from our red brief. If there are no further questions... Aren't they arguing Walmart copied? Yes. In their declaration, I believe it's in paragraphs 24 and 25, they make two assertions. They assert that there was a meeting between Walmart and Scrippo, and then they say, we have no infringement action against Walmart, therefore we have a belief that Walmart's Connexus system infringes our patent. Well, under Iron Grip, access to the claimed invention or the patented product is not sufficient. You have to have both access and substantial similarity. In here, we know absolutely nothing about the Connexus system. They submitted no evidence at all about how the Connexus system works, whether or not it practices the claimed invention, just nothing, basically, and so they can't prove that Walmart actually copied. Their belief that Walmart copied by filing an infringement action is also not sufficient under Iron Grip, because as Iron Grip says, otherwise any infringement action would automatically confirm the non-obviousness of the invention. And presumably that infringement action is still pending? No, that was settled and is not pending any longer. If there are no further questions, for these reasons, we would ask the Court to affirm the Board's decision, and I'll yield the remainder of my time. Thank you, Ms. Selward. Mr. Cleveland has some rebuttal time. Thank you, Your Honor. I would like to address the content, basically the motivation issue again, and focusing on pages 21 and 21 of the solicitor's brief, which I believe reflects an error in the record below. The evidence of secondary considerations has simply not been considered by the Patent Office in making this determination. They simply chose to ignore it because it was inconsistent with what they were asserting as a prima facie case. They say the industry reaction was not relevant because the claimed invention was not considered at the time. Well, if so, then this constitutes an admission by the Patent Office that they simply missed it. They missed the combination. These assembled industry representatives were charged with knowledge of the prior art, the Walker reference. Just to be clear, what do you think that they refused to consider? Because I'm on pages 18 through 21 of the appendix where the PTO Board gives a detailed discussion of long felt need followed by commercial success and copying. So, you say they just rejected it and didn't consider it. Where, how did they, what did they reject? Yes, Your Honor. The it that I'm referring to is the combined actions of these assembled representatives as being representative of what a person of ordinary skill in the art would do under similar circumstances. So, when the Patent Office and the Solicitor's Brief argue that they simply did not consider the invention that's claimed at the time, that's kind of an admission that they simply missed the opportunity to make the combination that they're asserting. So, you know, to the extent that they're asserting a... I'm not following you. So, go a little slower. Maybe my brain's not working quick today. What did they miss? Because I'm looking at the Board opinions. So, tell me how the Board opinion is deficient. It kind of doesn't matter what the PTO argues in this regard because your argument, as I understand it, is the Board failed to address something it had to address. Okay. The error here is that the industry action is... the assertion that the industry action is not relevant to the outcome or to the obviousness determination. All that is is an unwillingness to consider the facts. And to reach the conclusion that it's not relevant because the claimed invention was not before the representatives means that they simply missed the opportunity to combine lift with line. What's the evidence of industry reaction that you're referring to? The actions of the 75 representatives... But you don't have 75 declarations. The only declaration, as I understand it, is Mr. Coughlin's declaration, right? Who attests to the activities and actions of the representatives at this meeting. Which portion of the Coughlin declaration, which is on 3969 of the appendix, are you referring to? Specifically, what is the testimony you think was ignored by the Board and not credited properly? It's paragraph 10 of that declaration and I'm referencing page 3920 of the joint appendix. Also, paragraph 12. Okay, but the Board did expressly address this portion of the Coughlin declaration in the opinion. So, how did they fail to take it into account? Where are you referencing the passage where the Board addresses? Page 19 of the Board opinion appellate again points to the Coughlin declaration where industry members stated they had no way to implement the proposed. Then it says, in addition, as discussed above and below the paragraph, the Coughlin declaration is not sufficient to establish that the printing labels would not have been feasible. So, they're saying that his declaration on its face doesn't show that these things weren't feasible. As I understand their characterization, it's rather that his declaration suggests that people in the industry said it was just too expensive. Again, the cost issue was to implement the label requirement. The request from the Oregon Pharmacy Board was not to provide the upstream verifications in the present patent claims. So, the cost issue pertains to adoption of essentially BOM or LIF without Walker. So, the industry as a whole said that's not feasible and cost is an issue because we don't perceive that the economic benefit to patients would exceed that cost. That was an issue. But the issue was never presented to them combining that with the upstream verification process and they simply failed to make that connection. So, they failed to appreciate that the cost of developing the database would be less than the benefit to patients. One final thought, Mr. Cleveland? Yes, Your Honor. No, sir. I have nothing else if the court has no more questions. Thank you. We have the case. All rise.